CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 27 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ROBB HARKSEN,                          )
    Plaintiff,                        )          Civil Action No. 7:03-cv-00653
                                      )
v.                                     )          MEMORANDUM OPINION
                                      )
C/O HALE, et al.,                      )          By: Hon. James C. Turk
    Defendants.                       )          Senior United States District Judge

Plaintiff Robb Harksen, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Harksen alleges that prison officials at Red Onion State Prison (ROSP) and Wallens Ridge State Prison (WRSP) have violated his constitutional rights by interfering with his ability to practice his religious beliefs.[1] The court stayed this action in May 2004, pending resolution of an Establishment Clause challenge to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc, et seq., in another case before this court. As the United States has now declared that RLUIPA does not offend the Establishment Clause, see Cutter v. Wilkinson, 125 S. Ct. 2113 (May 31, 2005), the court will lift the stay.

Upon review of the complaint, however, the court finds that Harksen's claims must be summarily dismissed, pursuant to 28 U.S.C. § 1915A(b)(1). The court may not summarily dismiss a claim under § 1915A(b)(1) "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts [consistent with those alllegations] in support of his claim entitling him to relief." DeLonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (emphasis added). The court need not accept plaintiff's broad, legal conclusions

---

[1] This set of religious rights claims (with some other constitutional claims interspersed) was labeled as "Claim 1" of two "claims" in Harksen's original complaint. Each claim consisted of numerous subclaims. Harksen then attempted to amend this action to bring Claims 3 and 4, each packed with subclaims. The court severed the four claims into four separate lawsuits, and Harksen consented to pay four separate filing fees, reflecting his decision to pursue each claim as a separate suit.

1

as true facts, however. See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996).

Harksen characterizes his claims in this action as follows:

A.    Denial of religious items at ROSP from May 8, 2001 to January 28, 2002.

B.    Denial of religious items at WRSP from January 29, 2002 to August 6, 2002.

C.    Denial of religious items at ROSP from August 7, 2002 to the present.[2]

D.    Denial of family contacts and arbitrary discrimination towards non-mainstream religions by VDOC staff.

E.    Denial of religious freedom, exemptions from prison rules for those of mainstream religions in discrimination against those of lesser known faiths, and denial of good time.


## I. Denial of Religious Items

### a. Harksen's Allegations in Claims A, B, and C

From May 1999 to May 2001, officials at WRSP allowed Harksen to possess in his cell a handcarved Mjolnir medallion on a leather thong, with a sterling silver Valknot hanging from it by a dual thong. While Harksen was at WRSP, then a Level 6 institution (a so-called "super" maximum security prison), officials also allowed him to purchase and possess books about religious rites and prayer oil. Harksen styles himself a Wotanist, a follower of a religious faith that he equates to Odinism or Asatru. He asserts that the necklace, oil and books are related in unspecified ways to his religious practice. After his transfer to ROSP, on May 8, 2001, an officer informed Harksen that he could not possess his necklace and some of his books at ROSP, because the necklace was of leather and the books were on a "disapproved" list. Harksen filed grievances and appeals, seeking return of the items. He informed officials that he had no alternative means to exercise his faith, as they refused him access to a "hof" and confiscated "essential texts." Harksen argued that ROSP had

_____

[2]As relief on Claims A, B, and C, Harksen seeks thousands of dollars in damages, an apology from all officials involved, return of his book and necklace, attorney fees (although he represents himself in this action), and costs.

2

"no choice" but to allow him to possess the necklace and books, since officials at WRSP had allowed him to have the items and the two institutions were both super max prisons. On June 5, 2001, Harksen asked Assistant Warden of Operations J. Armentrout for return of the necklace for religious reasons, and Armentrout said, "That crap's not a religion." ¶6. In response to Harksen's grievances and appeals, officials refused to return the items for security reasons; they also stated that Harksen had not had approval to possess the necklace at WRSP, as he claimed.

On January 29, 2002, officials returned Harksen to WRSP. He immediately began filing requests to retrieve his religious items. Assistant Warden of Operations Harvey responded that "items not specifically authorized by DOP [Division Operating Procedure] must be authorized by the Warden and the Faith Review Committee [FRC]" and that Harksen would need to provide such documentation before the items would be returned. ¶10. Harksen asked Counselor Monk to make a photocopy of a page from Harksen's religious text so that he could support his religious claim about the necklace. Monk refused, stating that he would not make any copies for Monk because Harksen had sued him in another lawsuit, Civil Action No. 7:00-cv-00962.[3] ¶11-12. In response to Harksen's grievances, officials noted that the necklace was not authorized property under the DOP. Harksen complains that African American and Native American inmates were allowed to possess "items of similar design," in discrimination against him on the basis of his race and religion. ¶17. Harksen then made a request to the FRC by filing it with the WRSP warden on March 27, 2002. The warden reported on April 23, 2002, that he had forwarded Harksen's request and exhibits to the FRC; however, Harksen alleges that the warden failed to file the request with the FRC.

On August 6, 2002, officials transferred Harksen back to ROSP. ¶19. Harksen immediately spoke to officers, and filed written requests, seeking return of his necklace and book. Harksen

---

[3]Harksen's allegations here against Monk for denial of a photocopy and/or retaliation are frivolous. First, absent a showing of more than de minimis inconvenience to his litigation efforts, which Harksen fails to make, the claim of retaliation fails utterly. American Civil Liberties Union of Maryland v. Wicomico County, Maryland, 999 F.2d 780 (4th Cir. 1993). Second, as Harksen fails to demonstrate that denial of the photocopy hindered his litigation efforts in any significant way, he has no claim for denial of the copy. Lewis v. Casey, 518 U.S. 343 (1996).

3

asserts that confiscation of the necklace and books left him with no alternative means to practice his religion because the following other religious items are also disapproved in prison: a hof (temple), an altar, incense, "RUNE GANDR," runes, evergreen sprigs, flag, dagger, sword, and mead.

**b. Applicable Law**

Because prison officials are best equipped to make difficult decisions regarding prison administration, a prison regulation must be upheld if the court finds a rational connection between the policy and a legitimate governmental interest. Washington v. Harper, 494 U.S. 210 (1990); O'Lone v. Shabazz, 482 U.S. 342 (1987) (First Amendment requires prison officials ro reasonably accommodate inmates' observance of their religious beliefs); Turner v. Safley, 482 U.S. 78 (1987).

State officials are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff's clearly established right. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Torcasio v. Murray, 57 F.3d 1340 (4th Cir. 1995) (applying qualified immunity doctrine to claims for damages under the Americans with Disabilities Act (ADA) because prison officials' duties under this federal statute were not clearly established at time of alleged violations). In a qualified immunity analysis, the court "must inquire whether the established contours of the [right] were sufficiently clear at the time of the [alleged violation] to make it plain to reasonable officers that their actions under these particular circumstances violated" plaintiff's right. Winfield v. Bass, 106 F.3d 525, 531 (4th Cir. 1997) (en banc). See also Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. August 28, 1998). "[T]he exact conduct at issue need not have been held to be unlawful" so long as the unlawfulness of the conduct is manifest under existing authority. Wilson v. Layne, 526 U.S. 603, 614-15 (1999).

**c. Analysis**

The court concludes that Harksen's First Amendment claims fail under Turner. Prison officials confiscated and refused to return his necklace for security reasons. The court can easily conceive of security risks created by a maximum security inmate in segregation possessing a leather

4

strap with hard objects tied to it. Similarly, defendants confiscated his religious text because it was on a disapproved list. Certainly, prison officials may disapprove even religious texts if they contain material that presents a threat to prison security. Harksen fails to allege facts demonstrating that his text does not contain any such material. As the defendants' actions were thus rationally related to, and furthered, a legitimate security interest, the court will dismiss Harksen's First Amendment claim regarding his religious necklace, pursuant to § 1915A.[4]

Next, the court concludes that the defendants are entitled to qualified immunity against Harksen's attempted claims for monetary damages under RLUIPA. At the time of the RLUIPA violations that Harksen alleges–May 2001 through May 2002 approximately--the constitutionality of that statute as applied to state prison officials and the extent of the religious accommodation it required were not clearly established. The United States Supreme Court had ruled that a highly similar statute, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §2000bb, et seq, was invalid as applied to states and localities. City of Boerne v. Flores, 521 U.S. 507 (1997). After Congress enacted RLUIPA in an attempt to correct the constitutional deficiencies the Supreme Court had found in RFRA, district and circuit courts disagreed as to the new statute's validity as applied to state organizations and facilities. See, e.g., Cutter v. Wilkenson, 349 F.3d 257 (6th Cir. 2003) (citing other cases), rev'd, 125 S. Ct. 2113 (May 31, 2005); Madison v. Riter, 240 F.Supp.2d 566 (W.D. Va. 2003), rev'd, 355 F.3d 310 (4th Cir. 2003). Given the history of continuing controversy over the viability and scope of RLUIPA in the prison context, the court is of the opinion that

---

[4]Harksen also alleges that Black and Native American inmates have been allowed to possess "items of similar design," in violation of Equal Protection principles. Merely conclusory allegations of discrimination such as these, however, are insufficient to state a claim of unconstitutional discrimination. Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974). "A claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." Id. at 1140. As Harksen fails to allege a single, specific fact that he could offer in support of his charge that officials discriminated against him on the basis of his race, the court will summarily dismiss this aspect of his claim, pursuant to § 1915A. Harksen does allege that one officer made a derogatory remark about his religious beliefs; however, his own allegations indicate that officials refused to return his religious items for other, legitimate reasons. Therefore, the court will also dismiss Harksen's claim of religious discrimination.

5

inmates' rights under RLUIPA were not clearly established in 2001-2002 such that any reasonable officer would have known that the defendants' confiscation of Harksen's religious items violated his rights under RLUIPA. Therefore, the court holds that defendants are entitled to qualified immunity against the RLUIPA claims and will dismiss such claims from this action, pursuant to §1915A(b)(1). Under this section, the court may summarily dismiss claims filed in forma pauperis if it is clear that the defendants are immune to such claims or if plaintiff fails to allege facts stating any claim upon which relief can be granted. See Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983)(court may summarily dismiss claims based on affirmative defense under former version of §1915).

Moreover, as Harksen is now housed at ROSP, his claims for injunctive relief are, therefore, moot as to the WRSP defendants. Magee v. Waters, 810 F.2d 451 (4th Cir. 1987). Further, Harksen has not alleged facts indicating that he completed the FRC request process at ROSP before filing this lawsuit. Therefore, his claim for return of the items at ROSP is subject to dismissal under 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies.

In any event, the court finds it beyond doubt that Harksen could not present facts consistent with his current allegations stating any claim under RLUIPA. This statute provides that a prison regulation may not place a substantial burden on an inmate's ability to exercise his religious beliefs unless the regulation furthers a compelling state interest by the least restrictive means. § 2000cc-1(a)(1)-(2). Although Harksen baldly asserts that lack of his necklace and books places a substantial burden on his ability to practice his religious beliefs, he never explains how these items are used or why they are necessary for his practice of religion. Even if he could prove a substantial burden, he alleges no facts suggesting that his books and necklace do not pose a security threat. The mere fact that he possessed these items at another high-security prison does not prove they pose no risk at ROSP, a super-maximum security facility. Harksen also fails to suggest any less restrictive means the prison could use to eliminate the risk than by confiscating the items. Based on the foregoing, the court will dismiss Claims A, B, and C, pursuant to § 1915A(b)(1).

6

## II. Denial of Family Telephone Call

### a. Harksen's Allegations in Claim D

ROSP counselor Evans came to Harksen's cell door on November 20, 2001, and told him that Harksen's grandfather had died on November 18, 2001. ¶23. Harksen immediately asked to be allowed to telephone his family members. Evans said that he would arrange for Harksen to make a call; in fact, Evans did not make such arrangements and later denied that Harksen had requested a telephone call. ¶26. Harksen began filing emergency grievances, seeking to make a phone call before the Thanksgiving holiday long weekend. He complains that officers threw away at least one of these grievances and gave frivolous responses to others, as some of the officers wished to retaliate against him for his other litigation efforts. One response indicated that Harksen's request would not be granted because the decedent was not a member of his immediate family. Id. Harksen claims that he had no alternative means of contacting his family members and that some of them have not spoken to him since this incident because they perceived his lack of response as "an affront and inexcusable lack of caring." Id.

When Harksen filed a regular grievance on December 2, 2001, about being denied a telephone call after his grandfather's death, officials stated that he was not entitled to make the telephone call because he kept his hair long for religious reasons, in violation of DOP 864, and because the decedent was not an immediate family member. Harksen vaguely alleges that Rastafarian and Santerian inmates who wear their hair long for religious reasons are not under the same restrictions. Related to these allegations, Harksen brings claims under the First Amendment (Free Speech and Free Exercise), the Fourteenth Amendment (Equal Protection), and RLUIPA.

### b. Applicable Law

In reviewing a First Amendment claim that prison regulations interfere with an inmate's ability to practice his religious beliefs or associate or communicate with others, the court must consider four factors: a) whether there is a "valid, rational connection" between the regulation and

7

a legitimate and neutral governmental interest; b) whether alternative means of exercising the asserted constitutional right remain open to inmates; c) the extent to which accommodation of the asserted right will impact prison staff, inmates' liberty and the allocation of limited prison resources; and d) whether the regulation represents an "exaggerated response" to prison concerns. Turner, 482 U.S. at 89-91.

To succeed on an equal protection claim, a plaintiff must first demonstrate that he or she has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination; once this showing is made, the court then determines whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001). An inmate's right under the equal protection clause is properly subject to restrictions that are reasonably related to a legitimate penological interest. Id. Even where similarly situated persons are treated differently, "the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 367 (2001)(internal quotation marks omitted).

**c. Analysis**

Harksen's First Amendment claims both fail under Turner. By his own admissions, prison officials had legitimate grounds for denying Harksen an emergency telephone call after his grandfather died. First, they allowed such calls only when an inmate's immediate family member died. The reasonableness of this restriction is self-evident; expanding the privilege for any inmate who claimed the death of any family member, however remote the relationship, would multiply the requests exponentially and quickly burden prison staff and budget. Second, officials did not allow inmates in violation of DOP 864 to make any telephone calls to family members, and this restrictive environment for grooming policy violators, regardless of the inmate's religious beliefs, has been upheld as constitutional. See DeBlasio v. Johnson, 128 F. Supp.2d 315 (E.D. Va. 2000), aff'd DeBlasio v. Johnson, 13 Fed. Appx. 96 (4th Cir. 2001) (unpublished). Additionally, contrary to

8

Harksen's pleading, he did have an alternative method to contact his family–through the mail.

Harksen also fails to state any § 1983 claim for unequal treatment. First, he fails to allege facts indicating that any one denied him an emergency telephone based because of his religious beliefs. Id. at 327. Moreover, he does not allege any specific facts whatsoever on which he could prove his bald assertion that other inmates in violation of DOP 864 have been allowed to make emergency telephone calls after learning that a non-immediate family member had died.

Finally, the court cannot find any possible RLUIPA claim arising from Harksen's allegations about his telephone call request. He does not identify any substantial burden that the DOP 864 telephone restrictions place on his exercise of his religious beliefs, particularly as he identifies only one instance when officials denied him a call. Based on the foregoing, the court will dismiss Claim D in its entirety, pursuant to § 1915A.

## III. Problems with Good Conduct Time

Claim E includes several claims related to good conduct time. First, Harksen brings several "habeas" claims, seeking restoration of good conduct time that he claims he should have earned between May 2002 and May 2003, given his completion of an anger management class and his total annual review point score in May 2002. Because Harksen was not in compliance with DOP 864, as he refused to cut his hair for religious reasons, the defendants did not give him points for the class and denied him the opportunity to earn good time, even though his point score would ordinarily have entitled him to earn ten days for every thirty days served. He asserts that these actions deprived him of a liberty interest without due process.

As Harksen admits that he has never presented his good conduct time claim to a state court, his "habeas" claims must be dismissed for failure to exhaust state court remedies. See 28 U.S.C. § 2254(b). Moreover, he fails to state any federal due process claim here. Although Virginia statutes and VDOC regulations require that inmates have an opportunity to earn good conduct time, these provisions do not create any federally protected liberty interest in earning such credit, because prison

9

officials retain complete discretion over inmates' good time earning rate. DeBlasio, 128 F. Supp.2d at 330. Therefore, defendants' refusal to place Harksen at the desired good time classification, despite his earned points and for whatever reason, did not violate his federal constitutional rights. Finally, to the extent that defendants' actions may have represented a violation of state law, such violations do not state any ground for relief under § 2254(a) (requiring petitioner to show that he is confined in violation of the constitution or laws of the United States).

Harksen next complains that the defendants gave annual review points and good time credit to other inmates in violation of DOP 864, thus violating the Equal Protection Clause. Harksen fails to allege any specific facts demonstrating intentional discrimination, and his vague, conclusory statements are insufficient to state an actionable, constitutional claim. DeBlasio, 128 F. Supp.2d at 327. Harksen also asserts that DOP 864 discriminates on the basis of gender because female inmates in VDOC institutions are allowed to earn good conduct time while wearing long hair. Courts have previously rejected Harksen's gender discrimination claim to DOP 864. Id. at 327-28 (citing Ashann-Ra v. Commonwealth of Virginia, 112 F.Supp.2d 559 (W.D. Va. 2000)).

Harksen also argues that DOP 864 prevents him from earning good time or participating in programs to earn points toward good time and thus punishes him for practicing his religious believes, in violation of the First Amendment and RLUIPA. Courts have soundly rejected such First Amendment challenges to good time restrictions on inmates who do not comply with a neutral grooming policy implemented for security reasons. DeBlasio, 128 F.Supp.2d at 322-23 (citing Hines v. South Carolina Dept. of Corr., 148 F.3d 353 (4th Cir. 1998)).

To state a possible claim under RLUIPA, Harksen must, at a minimum, demonstrate that penalizing him for wearing his hair long places a substantial burden on his exercise of religious beliefs. § 2000cc-1(a). Harksen has not alleged facts meeting this burden by any stretch of logic. He does not allege that his religious beliefs require him to keep his hair long, that wearing long enhances his religious practice in any specific way, or that he is hampered from practicing his religion if his hair is short. Absent such allegations, the court cannot find that Harksen states any

10

actionable claim under RLUIPA regarding the restrictions he faced for violating DOP 864. The court will dismiss Claim E in its entirety, pursuant to § 1915A.

## IV. Conclusion

For the stated reasons, the court finds that Harksen fails to allege facts stating any actionable claim under § 1983 or RLUIPA. Accordingly, the court will dismiss his entire complaint in this action, pursuant to § 1915A(b)(1). An appropriate order shall be issued this day.

The plaintiff/petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 27th day of September, 2005.

Senior United States District Judge

11